19982

CORT INDUSTRIES CORP., Respondent, v. SWIRL, INC., Appellant. Corrie McClain REID, Administratrix of the Estate of Eugene Junior Reid, Appellant, v. Roger Dale REVELS, and one (1) 1970 2 dr. Ford Mustang, License No. BCD229 (SC) 1973, Respondent.

(213 S. E. (2d) 445)

*Messrs. E. P. Riley* and *Hubert E. Yarborough, III, of Riley & Riley,* Greenville, *for Appellant Swirl, Inc.,*

*Messrs. Joseph W. Board, of Pickens,* and *Clement L. McEachern,* of Greenville, *for Appellant, Corrie McClain Reid, Admnx.,*

*Felix L. Finley, Jr., Esq.,* of Pickens, *for Respondent, Cort Industries Corp.,*

144

J. D. Todd, Jr., Esq., of Leatherwood, Walker, Todd & Mann, Greenville, for Respondent Roger Dale Revels,

March 31, 1975.

*Per Curiam:*

These cases are appeals from the Pickens County Civil and Criminal Court (hereinafter referred to as Pickens County Court). The merits of these cases were heard at the December, 1974, term of this Court. By order of this Court issued on January 6, 1975, we raised, *ex mero motu,* the question of our jurisdiction, if any, to hear a direct appeal from the Pickens County Court.

Act Number 1232, Acts and Joint Resolutions of 1972, created the Pickens County Court. Section 15 of that act provided that appeals would be to the circuit court. In 1973 the jurisdictional authority of the Pickens County Court was expanded; however, the method of appeal was not changed. Act Number 22, Acts and Joint Resolutions of 1973. On March 13, 1974, the circuit court was divested of appellate jurisdiction; thereafter, appeal was to be directly to this Court. Act Number 939, Section 17, Acts and Joint Resolutions of 1974.

The sole question for our determination is whether this change of jurisdiction embraced by the 1974 Act contravenes the provisions of Article V of the South Carolina Constitution as approved by the electorate in 1972 and ratified by the General Assembly on April 4, 1973.

The people in approving Article V mandated a uniform system of courts for the administration of justice in South Carolina. Section 1 of that Article reads:

"The judicial power shall be vested in a *unified judicial system,* which shall include a Supreme Court, a Circuit Court, and *such other courts of uniform jurisdiction* as may be provided for by general law." (Emphasis added.)

This section would, of course, without the aid of other constitutional provisions, invalidate the authority of all statutor-

ily created courts, unless they are of uniform jurisdiction and part of a uniform judicial system.

The people and the General Assembly recognized that a unified system could not be effectuated instantaneously. Chaos would have resulted if courts existing prior to ratification of Article V were immediately sapped of authority without replacement by an alternate system of courts.

Section 22 of Article V was designed to remedy this problem. It states:

"Notwithstanding the provisions of this Article, any existing court may be continued as authorized by law until this Article is implemented pursuant to such schedule as may hereafter be adopted."

This section is a remedial device which allows for an orderly transition to the unified system contemplated by Section 1, but which must be implemented by enactment by the General Assembly.

It has been urged by counsel that pursuant to Section 22, new, local courts, not of uniform jurisdiction, could be created by legislation and be in harmony with Section 1. Counsel also proposes that the jurisdiction of existing courts could be expanded or contracted and, as here, appellate jurisdiction could be properly altered by statute. We think such argument fails to appreciate the clear, imperative mandate of the people for a unified court system and the necessarily remedial thrust of Section 22.

Article V in Section 1 lucidly sets forth the directive of the people that the court system "shall be vested in a unified judicial system." The purpose of Section 22 is not to detract from that goal by allowing piecemeal alteration of the jurisdiction of individual, statutorily created local courts. That would only postpone judicial reform and distend the current balkanization of our system. If Section 22 was allowed the scope advanced by counsel, the local, factionalized court system would be exhumed and Article V

interred. If we were to accept the view advanced by counsel, the mandate of Section 1 would be rendered a mere hollow formalistic expression of preference for a uniform system.

Apparently, the General Assembly originally shared the view we have announced today. Act 503, Joint Acts and Resolutions of 1973, enacted March 28, 1973, less than one month prior to ratification of Article V, authorized continuance of existing courts (Pursuant to Section 22) "with all the powers and duties *vested in them prior to* such ratification (of Article V)." (Emphasis added.)

For the above stated reasons, we are of the view that the provisions of Act 939, Acts and Joint Resolutions of 1974, changing appeal from the Pickens County Court to the Circuit Court so that appeal is direct to this Court is in conflict with Article V, Section 1, of the South Carolina Constitution.

Accordingly, these appeals are remanded to the Circuit Court for proper consideration of the merits.