## 20295

Perry Frank THOMPSON, Commanding Officer, State Highway Patrol, et al., Plaintiffs, v. The SOUTH CAROLINA COMMISSION ON ALCOHOL AND DRUG ABUSE, and William J. McCord, Director, the South Carolina Commission on Alcohol and Drug Abuse, in his Official Capacity, Defendants.

(229 S. E. (2d) 718)

*Joseph C. Coleman, Dep. Atty. Gen.,* of Columbia, *for Plaintiffs,*

*Messrs. Victor S. Evans, Dep. Atty. Gen., Edwin E. Evans and George C. Beighley, Asst. Attys. Gen.,* of Columbia, *for the Defendants,*

October 26, 1976.

*Per Curiam:*

We are called upon in the original jurisdiction of the court in this declaratory judgment action to determine the constitutional validity of Act No. 1213 of the Acts of the General Assembly for 1974, the Uniform Alcohol and Intoxication Treatment Act (the Act).

The plaintiffs are the Commanding Officer of the South Carolina Highway Patrol, the Director of the South Carolina Law Enforcement Division, and the President of the South Carolina Law Enforcement Officers' Association. The action is brought in both an individual capacity and an official capacity, representing generally peace officers charged with the duty of enforcing the criminal laws of this State as well as administering the Act here under attack.

The defendants are the South Carolina Commission on Alcohol and Drug Abuse and its director. This commission is a part of the executive branch of the state government.

The defendants have first raised the question of the standing of these plaintiffs to bring the action, arguing the absence of a substantial interest in the subject matter. While it is the general rule, as stated in *Greenville County Fair Assn'n v. Christenberry*, 198 S. C. 338, 17 S. E. (2d) 857 (1941), that public officials may not contest the validity of a statute, the rule is not an inflexible one and we are of the opinion that the questions involved are of such wide concern, both to law enforcement personnel and to the public, that the court should determine the issues in this declaratory judgment action.

The conflicts between § 16-558, Code of Laws for South Carolina (1968) *as amended* (1975 Supp.) (public disorderly conduct or shooting, etc.) and the Act here under attack, bring about the peace officers' dilemma which has resulted in this challenge of the Act.

Section 16-558 reads in pertinent part as follows:

"§ 16-558.   Public disorderly conduct or shooting, etc.— Any person who shall (a) be found on any highway or at any public place or public gathering in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner, . . . shall be deemed guilty of a misdemeanor and upon conviction shall be fined not more than one hundred dollars or be imprisoned for not more than thirty days."

It is a statewide statute applying to all municipalities and counties. Its validity is not in contest.

The challenged Act is patterned after the Uniform Alcoholsim and Intoxication Treatment Act and is designated as such in the title; however, it is greatly different in many regards and has experienced several deletions and additions in the legislative process.

The Act first declares it to be "the policy of this State that alcoholics and intoxicated persons may not be subjected to criminal prosecution because of their consumption of alcoholic beverages, but rather should be afforded a continuum of treatment in order that they may lead normal lives as productive members of society."

It also declares (§ 8) that "[n]o county, municipality or other political subdivision may adopt or enforce a local law, ordinance, resolution or rule having the force of law that includes drinking, being a common drunkard or being found in an intoxicated condition as one of the elements of the offense giving rise to a criminal or civil penalty or sanction."

Although these provisions of the Act conflict with the retention of § 16-558, they do not expressly or impliedly repeal § 16-558 (and counsel does not contend otherwise) and, therefore, § 16-558 remains the law of the entire state of South Carolina notwithstanding the declaration of policy and § 8.

Section 9 limits the application of the entire Act to certain counties and municipalities in verbiage as follows:

"SECTION 9. Where article applicable.—The provisions of this article shall only apply to those counties and municipalities whose governing bodies approve the counties' or municipalities' participation in the alcohol and intoxication treatment program established herein. Unless the governing body of a county or municipality consents, no peace officer, emergency service patrol, shelter or treatment facility

of the county or municipality shall be used to effectuate the provisions of this article."

The Act imposes upon peace officers in counties and municipalities with participating alcohol and intoxication treatment programs, the duty of taking "alcoholics," "incapacitated persons" and "intoxicated persons," (as defined in the Act) into protective custody, and delivering them to treatment facilities, shelters, hospitals, or "an appropriate destination." "Protective custody" is not defined in the Act and we find no definition of it in *Words and Phrases* or *Black's Law Dictionary*. The Act stipulates that it is not an arrest. Persons so apprehended may not be prosecuted for public drunkenness. They may not be detained for treatment of an alcoholic problem unless they volunteer to stay, but they may be kept in protective custody temporarily during a sobering-up or drying-out process, and then released.

Such persons may be committed under other provisions of law (Act No. 1230 of 1968) after a judicial hearing. This Act (1230) provides for the admission and commitment of alcohol and drug addicts to treatment facilities. It does not deal with public drunkenness short of addiction.

The Act does not change the criminal law in any municipality or county; rather it grants immunity from prosecution and directs that any municipality or county participating in the Alcohol and Intoxication Treatment Program refrain from enforcing the criminal law as such and, in lieu of prosecution, encourage the violator to voluntarily undergo treatment. In those counties which do not have a treatment program approved, § 16-558 would be enforced in the usual fashion, resulting in fine or imprisonment upon conviction.

There can be no doubt but that the legislature, under its plenary power, can enact any statute not violative of the constitution. Accordingly, it may elect to treat public drunkards as criminals or, on the other hand, may treat such persons as patients in need of assistance. The heart

of the issue presented to us is: Does the proposed treatment of persons violating § 16-558 as patients in one county or municipality and as criminals in others, violate either the constitution of this State or of the United States?

Plaintiffs allege in their complaint that the Act is void under both constitutions, because (a) "it constitutes Act No. 1213, a special law, where a general law can be made applicable" [South Carolina Constitution, Art. III, § 34], and (b) "it denies to persons in those parts of the state that are, or might, be exempt from its provisions equal protection of the law." [South Carolina Constitution, Art. I § 3 and United States Constitution, Fourteenth Amendment.]

Article III, § 34, of the South Carolina Constitution provides:

"The General Assembly of this State shall not enact local or special laws concerning any of the following subjects or for any of the following purposes, to-wit:

[Several specified subjects are here enumerated.]"

Subsection IX of § 34 continues by stating:

"In all other cases, where a general law can be made applicable, no special law shall be enacted."

Article I, § 3 of the same Constitution provides as follows:

"§ 3.   Privileges and immunities; due process; equal protection of laws.—The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws."

The Fourteenth Amendment to the Constitution of the United States provides that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty,

or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We are of the opinion that the Act is in conflict with all three provisions.

Many states have constitutional provisions, similar to ours, prohibiting special laws. The overall purpose of these provisions is closely related to the equal protection guarantee in both constitutions.

"The general effect of constitutional provisions against special legislation is to prohibit class legislation of the character inhibited by the clause of the Fourteenth Amendment to the Federal Constitution securing equal protection of the laws. . . . However, special legislation is unconstitutional, whether it is effected by one statute or by the joint operation of two going into force successively. A constitutional provision prohibiting the enactment of local or special laws granting to any corporation, association, or individual any special or exclusive privilege, immunity, or franchise whatever, does not apply to legislation that offers to any class of persons privileges peculiarly appropriate to their class on condition that several of them shall unite for the purpose of accepting and exercising them . . ." 73 Am. Jur. (2d), *Statutes,* § 41.

Counsel for the defendants contend that the Act is permissible as a "local option" law, citing several statutes, most of which have not undergone any constitutional test. We disagree. The three constitutional provisions, quoted hereinabove, have a kindred overall purpose and that is to prevent discrimination and to assure that all persons are treated equally. The acts of the legislature must apply equally to all persons within an appropriate class. Alcoholics, incapacitated persons and intoxicated persons throughout the state form an appropriate class, but alcoholics, incapacitated persons and intoxicated persons who live

in a county which has an approved treatment facility program do not form an appropriate class for the purpose of the legislation under consideration. A combination of the Act and § 16-558 would of necessity cause persons in a participating county or municipality to be treated as sick persons in need of medical help, while persons in a county or municipality with no participating program would be treated as criminals.

The Act, though seemingly general in form, is special in its application. Whether chronic alcoholism is, or is not, a disease and should be treated as such rather than as a crime is the subject of much debate. *See Powell v. Texas,* 392 U. S. 514, 88 S. Ct. 2145, 20 L. Ed. (2d) 1254 (1968). If the time has come when persons with problems growing out of excessive consumption of alcohol should be treated as patients instead of criminals, we see no reason why the subject should not be dealt with by way of a general law. Certainly, a general law, as contemplated by Article III, § 34, of our Constitution, can be made applicable. *See State v. Hammond,* 66 S. C. 300, 44 S. E. 933 and 66 S. C. 219, 44 S. E. 797 (1903).

"Equal protection of the laws," as referred to in both constitutions, is difficult to define and not susceptible of exact delimitation, or can the boundaries of the protection afforded be automatically or rigidly fixed.

"The guiding principle most often stated by the courts is that the constitutional guaranty of equal protection of the laws requires that all persons shall be treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. In some cases the principle is stated a little more fully so as to include also within its purview of equality exemptions from liabilities. The equal protection guaranty is intended to secure equality of protection not only for all, but against all similarly situated. Protection is not protection unless it accomplishes this. Immunity granted to a class however limited, having the effect to deprive another class, however limited, of a personal or

property right is just as clearly a denial of equal protection of the laws to the latter class as if the immunity were in favor of, or the deprivation of right permitted to be worked against a larger class." 16 Am. Jur. (2d) *Constitutional Law*, § 488.

Discrimination, as it relates to criminal punishment, is discussed in 21 Am. Jur. (2d), *Criminal Law—Punishment*, § 582, where we find the following:

"§582.—Equal protection of laws requirement.

The Fourteenth Amendment to the Federal Constitution guarantees to everyone within the jurisdiction of a state the equal protection of the laws. Among other things, this requires that in the administration of criminal justice no person be subjected to a greater or different punishment for an offense than that to which others of the same class are subjected. . . .

"In the exercise of its police power a state may establish various classifications in prescribing the punishment for crime, provided the classifications are reasonable and not arbitrary . . . .

"Punishments based on arbitrary or unreasonable classifications, such as race or color, are invalid. *And a statute that varies the punishment for an offense according to the county or district in which it is committed has been held unconstitutional as an unjust discrimination and a deprivation of the equal protection of the laws."* (Emphasis added.)

Having concluded that the application of the Act makes it unconstitutional, we proceed to consider whether § 9, quoted hereinabove, is severable such that the remainder of the statute may stand. In *State v. Harper*, 251 S. C. 379, 162 S. E. (2d) 712 (1968), we expounded the modern day rule regarding severability and stated:

"Where a part of a statute is unconstitutional, and that which remains is complete in itself, capable of being executed,

wholly independent of that which is rejected, and is of such character that it may fairly be presumed that the Legislature would have passed it independent of that which is in conflict with the Constitution, then the courts will reject that which is void and enforce the remainder."

We hold that the Act does not meet this test and, accordingly, parts of the statute are not salvageable.

The prayer for relief set forth in the complaint is granted. The injunction of this Court, issued by the Chief Justice on July 2, 1976, enjoining enforcement and effect of Act No. 1213 of the Acts of the General Assembly for 1974, is continued in effect and made permanent.