713 S.E.2d 604

**CHARLESTON COUNTY SCHOOL DISTRICT, Appellant,**

**v.**

**Robert W. HARRELL, in his official capacity as Speaker of the S.C. House of Representatives, Ken Ard in his official capacity as President of the S.C. Senate, Nikki R. Haley in her official capacity as Governor of the State of South Carolina, and the State of South Carolina, Respondents.**

**No. 27011.**

Supreme Court of South Carolina.

Heard Jan. 18, 2011.

Decided July 25, 2011.

---

554

Armand Derfner and D. Peters Wilborn, Jr., of Derfner, Altman & Wilborn, both of Charleston, for Appellant.

Attorney General Alan Wilson, Assistant Deputy Attorney General J. Emory Smith, Jr., of Office of the Attorney General; Bradley S. Wright, Charles F. Reid, Michael R. Hitchcock, and Kenneth M. Moffitt, all of Columbia, for Respondents.

Justice HEARN.

Charleston County School District (School District) appeals from the circuit court's order granting a Rule 12(b)(6), SCRCP, motion to dismiss its complaint alleging the unconstitutionality of Act. No. 189 of 2005 (Act 189), as well as its decision to dismiss the Governor as a party to this action.[1] Although we affirm the circuit court's dismissal of the Governor, we find School District's complaint sufficiently states a cause of action that Act 189 is unconstitutional. We therefore affirm in part, reverse in part, and remand.

## FACTUAL/PROCEDURAL BACKGROUND

South Carolina adopted a charter school law in 1996, called the South Carolina Charter Schools Act (Charter Schools Act). The General Assembly amended the Charter Schools Act once in 2002 and again in 2006. In the Charter Schools Act, the General Assembly provided rules governing all aspects of the organization, approval, and operation of charter schools in South Carolina, as well as the obligations of each sponsoring school district.

In 2005, the General Assembly passed Act 189, which provided, in part, as follows:

Section 5A. (A) The Charleston County School District may not deny a charter school, charter school teacher, or charter school student anything that is otherwise available to a public school, public school teacher, or public school student including, but not limited to, the provisions in subsection (B).

(B)(1) The local school district of a charter school in Charleston County may not charge rent to a charter school that was covered from an existing public school.[2]

---

1. By order dated July 19, 2011, the current Governor and current President of the Senate were substituted as parties for the former Governor and former President of the Senate.

2. Other subsections of subsection (B) included provisions regarding Charleston County charter school's application for grants, charter school teacher's nominations for Teacher of the Year, and charter school student's qualifications for Laura Brown Fund Grant. These subsections are not pertinent to this appeal.

By its terms, Act 189 only applied to charter schools in Charleston County, but it did not purport to amend the Charter Schools Act.

School District filed a complaint against Speaker of the House Robert Harrell, President of the Senate Andre Bauer, Governor Mark Sanford, and the State of South Carolina (collectively, Respondents), seeking a declaratory judgment that Act 189 was unconstitutional.[3] The complaint alleged that Act 189 was special legislation in violation of Article III, § 34 and Article XIII, § 7 of the South Carolina Constitution because the subject of charter schools was already comprehensively addressed by the Charter Schools Act and Act 189 only applied to Charleston County's charter schools without any reasonable basis for doing so.

Respondents filed a joint motion to dismiss under Rule 12(b)(6), SCRCP. The circuit court granted Respondents' motion, finding that Act 189 was constitutional, Act 189 had not been overruled by the 2006 amendments to the Charter Schools Act, and that the Governor should be dismissed because he had no authority given to him under Act 189. This appeal followed.

## ISSUES

School District raises five issues in this appeal:

1. Did the circuit court err in failing to find Act 189 unconstitutional as a special law in conflict with the state-wide Charter Schools Act?

2. Did the circuit court err in finding Act 189 constitutional as a special provision in a general law?

3. Did the circuit court err in granting a motion to dismiss based on matters outside the pleadings?

---

**3.** Initially, School District's complaint only listed Harrell, Bauer, and Sanford as defendants. These Respondents filed a motion to dismiss in lieu of an answer. After a hearing on this motion, the circuit court ordered that School District add the State as a defendant. School District filed an amended complaint a few weeks later, adding the State as a party as well as a claim that Act 189 is inconsistent with the 2006 amendments to the Charter Schools Act.

4. Did the circuit court err in failing to find Act 189 superseded by the 2006 amendments of the Charter Schools Act?

5. Did the circuit court err in dismissing the Governor as a defendant?

## STANDARD OF REVIEW

 In considering a motion to dismiss pursuant to Rule 12(b)(6), SCRCP, the circuit court must base its ruling solely upon the allegations set forth on the face of the complaint. *Doe v. Greenville County Sch. Dist.*, 375 S.C. 63, 66–67, 651 S.E.2d 305, 307 (2007). The motion may not be sustained if the facts alleged in the complaint and the inferences drawn therefrom would entitle the plaintiff to relief under any theory. *Id.* "[P]leadings in a case should be construed liberally and the Court must presume all well pled facts to be true so that substantial justice is done between the parties." *Overcash v. S.C. Elec. & Gas Co.*, 364 S.C. 569, 572, 614 S.E.2d 619, 620 (2005) (citing *Stroud v. Riddle*, 260 S.C. 99, 102, 194 S.E.2d 235, 237 (1973)).

## LAW/ANALYSIS

School District argues the circuit court erred by considering matters outside the pleadings in the motion to dismiss, in finding that a logical basis exists for deeming Act 189 a special provision in a general law, and in dismissing the Governor as a party. Respondents assert the circuit court properly considered certain factors regarding Charleston County's unique topography and geography because they were established by case law and statute; that Act 189 falls within the General Assembly's broad discretion to pass legislation impacting an individual school district; and, that because School District cannot link the Governor's authority to Act 189, he was properly dismissed as a party. We find School District's complaint stated a viable cause of action raising the unconstitutionality of Act 189 as special legislation where a general law can be made applicable. We further find that the circuit court erred in considering matters outside the pleadings but correctly dismissed the Governor as a party.

Article XI, Section 3 of the South Carolina Constitution gives the General Assembly the right to "provide for the maintenance and support of a system of free public schools open to all children in the State and shall establish, organize and support such other public institutions of learning, as may be desirable." This section imbues the General Assembly with more discretion with respect to legislation impacting a school district than it enjoys in other areas. *See McElveen v. Stokes,* 240 S.C. 1, 10, 124 S.E.2d 592, 596 (1962) ("[T]he scope of the legislative power is much broader in dealing with school matters than is the scope in dealing with various other subjects."). However, this right is not without certain limitations. Article III, Section 34 of the South Carolina Constitution states, in pertinent part: "In all other cases, where a general law can be made applicable, no special law shall be enacted." "[L]egislation regarding education is not exempt from the requirements of Art. III, § 34(IX)." *See Horry County v. Horry County Higher Educ. Comm'n,* 306 S.C. 416, 419, 412 S.E.2d 421, 423 (1991) (citations omitted).

 We outlined the framework to determine whether special legislation exists in *Kizer v. Clark,* 360 S.C. 86, 600 S.E.2d 529 (2004). "A law is general when it applies uniformly to all persons or things within a proper class, and special when it applies to only one or more individuals or things belonging to that same class." *Id.* at 92, 600 S.E.2d at 532. If the legislation does not apply uniformly, the inquiry then becomes whether the legislation creates an unlawful classification. *Id.* at 93, 600 S.E.2d at 532. However, the mere fact that a law creates a classification does not render it unlawful. *Id.* Instead, the constitutional prohibition against special legislation operates similarly to our equal protection guarantee in that it prohibits unreasonable and arbitrary classifications. *Id.* at 93, 600 S.E.2d at 533. "A classification is arbitrary, and therefore unconstitutional, if there is no reasonable hypothesis to support it." *Id.* Accordingly, special legislation is not unconstitutional where there is "a substantial distinction having reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation and the objects and places excluded." *Horry County,* 306 S.C. at 419, 412 S.E.2d at 423. Thus, where a special law will best meet the exigencies of a particular situation, it is not unconstitution-

al. *Med. Soc. of S.C. v. Med. Univ. of S.C.*, 334 S.C. 270, 279, 513 S.E.2d 352, 357 (1999). "In other words, the General Assembly must have a logical basis and sound reason for resorting to special legislation." *Horry County*, 306 S.C. at 419, 412 S.E.2d at 423 (citation omitted).

■ As an initial matter, we hold the circuit court improperly considered matters outside the pleadings in deciding Respondents' motion to dismiss. In support of its decision to grant the motion to dismiss, the circuit court cited to a South Carolina federal district court case which found Charleston County has a unique geography with nearly one hundred miles of coastline that is divided by rivers and linked by bridges. *See United States v. Charleston County Sch. Dist.*, 738 F.Supp. 1513, 1521 (D.S.C.1990), *affirmed in part and vacated in part on other grounds*, 960 F.2d 1227 (4th Cir.1992). It is a well-settled principle that in resolving a Rule 12(b)(6) motion to dismiss, the court is limited to a consideration of the allegations contained within the four corners of the complaint. *See Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007). In using the federal district court case to supply facts from outside the complaint, the circuit court impermissibly went beyond the proper parameters of a motion to dismiss.[4] Therefore, we hold the circuit court erred when it included matters outside the complaint in deciding this motion to dismiss.

■ Confining our analysis to the allegations contained in the complaint, and taking them to be true, as we must, we believe School District has stated a sufficient cause of action challenging the constitutionality of Act 189 to withstand a Rule 12(b)(6) motion to dismiss. School District alleges the Charter Schools Act is a general law that applies uniformly to every

---

4. We recognize that a motion to dismiss may be converted into a motion for summary judgment when the court considers matters outside the pleadings. Rule 12(b), SCRCP. However, in order for the conversion to take place, the parties must be "afforded a reasonable opportunity to introduce evidentiary matters" of their own. *Johnson v. Dailey*, 318 S.C. 318, 321, 457 S.E.2d 613, 615 (1995). Because School District was not afforded the opportunity to introduce evidence in response to that injected into the matter by the court, we decline to find that this Rule 12(b)(6) motion was converted into a motion for summary judgment.

county in South Carolina. Furthermore, it alleges Act 189 improperly singles out only Charleston County as the recipient of special rules for areas covered by the Charter Schools Act without a rational basis for doing so. For example, School District's complaint points to Sections 59–40–140 and 59–40–170 of the South Carolina Code (Supp.2009) as examples of where the Charter Schools Act already has laws concerning what Act 189 appears to cover.[5] In general, School District avers the Charter Schools Act places no obligation on a sponsoring district to provide services to a charter school, but Act 189 obligates a school district to do so. According to School District, these provisions illustrate the special treatment Act 189 affords to Charleston County, and School District's complaint alleges there is no reason for this difference. Therefore, School District has stated a sufficient prima facie case that Act 189 is unconstitutional special legislation. However, we express no opinion regarding the ultimate constitutionality of Act 189.

Respondents direct our attention to a 2007 Attorney General's opinion which found Act 189 to be constitutional. The opinion found:

The purpose of Act No. 189, when considered with the express goals of the Charter School Act of 1996, as amended, is to benefit the entire county of Charleston. Inasmuch as the South Carolina Charter School Act designates charter schools as part of the public school system, there is little doubt that the enactment of Act No. 189 sought to provide for the maintenance and support of the public schools of Charleston County, consistent with Act XI, § 3.

*Op. S.C. Atty. Gen.*, Op. No. 07–139 (Oct. 19, 2007). Attorney General opinions, while persuasive, are not binding upon this

---

5. School District argues that Act 189 requires a school district to provide anything to a charter school that it provides to a public school, while section 59–40–140(E) states the provision of various services to a charter school are "subject to negotiation" between the charter school and the school district. Additionally, School District contends Act 189 forbids the charging of rent to a charter school for use of a building that formerly was a public school, while section 59–40–140(J) envisions charter schools independently acquiring their own facilities and section 59–40–170 requires a school district to grant the charter school "first refusal to purchase or lease," not occupy free of charge, any vacant buildings it no longer wants.

Court. Moreover, at this procedural juncture, we are only concerned with whether School District's complaint states a viable cause of action sufficient to withstand a Rule 12(b)(6) motion to dismiss.

 Finally, we affirm the dismissal of the Governor as a party to this action. Nothing in School District's complaint demonstrates a nexus between Governor or his authority and Act 189. Instead, School District only alleges that the Governor's ample executive powers render him an appropriate defendant in any suit where the constitutionality of a statute is challenged. This is an insufficient reason to name the Governor as a party defendant. While School District cites to cases where the Governor was a proper party, those cases dealt with the specific powers and responsibilities of the Governor. That plainly is not the case here. Therefore, we affirm the circuit court's ruling that the Governor should be dismissed from this action.

Because we find the circuit court erred in granting the motion to dismiss, we decline to address School District's remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999).

## CONCLUSION

We reverse the circuit court's order granting Respondents' motion to dismiss, and remand the case to the circuit court for further proceedings. In so doing, we reiterate that we express no opinion as to the validity or proper interpretation of any of the statutes cited herein. Instead, we merely hold that School District's allegations state a prima facie case that Act 189 is unconstitutional. However, we affirm the circuit court's ruling regarding the dismissal of the Governor as a party to this action.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

PLEICONES, BEATTY and KITTREDGE, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL.

Respectfully, I dissent. Although I agree with the majority that the circuit court judge improperly considered facts outside the pleadings, I would nevertheless affirm the circuit court's dismissal of this case because, in my assessment, the allegations in the complaint do not entitle Appellant to relief under any legal theory.

The majority found Appellant stated a prima facie case that Act 189 is unconstitutional because the act improperly singles out the Charleston County School District without a rational basis for doing so. In my opinion, unless there is a conflict between the special and the general law, the question of whether there is a logical basis for invoking a special law need not be reached.

The South Carolina Constitution prohibits the enactment of special or local laws "where a general law can be made applicable," S.C. Const. Art. III, § 34(IX), but permits the General Assembly to enact "special provisions in general laws." *Id.* § 34(X). This Court is deferential to the General Assembly when determining the constitutionality of a local law and will not declare that law unconstitutional "unless its repugnance to the Constitution is clear beyond a reasonable doubt," *Med. Soc'y of S.C. v. Med. Univ. of S.C.*, 334 S.C. 270, 279, 513 S.E.2d 352, 357 (1999), or "there has been a clear and palpable abuse of legislative discretion." *Sirrine v. State*, 132 S.C. 241, 248, 128 S.E. 172, 174 (1925), *overruled on other grounds*, *McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985). As the majority rightly points out, this Court affords the General Assembly even greater deference when evaluating local laws involving school matters. *See McElveen v. Stokes*, 240 S.C. 1, 10, 124 S.E.2d 592, 596 (1962). When local legislation involves public education, the constitutional restriction on the enactment of local laws must be viewed in light of the General Assembly's Article XI duty to "provide for the maintenance and support of a system of free public schools open to all children in the State...." S.C. Const. art. XI, section 3; *McElveen*, 240 S.C. at 10, 124 S.E.2d at 596. Accordingly, this Court has traditionally sustained local laws relating to the state's public education system, *Bradley v. Cherokee Sch. Dist.*, 322 S.C. 181, 470 S.E.2d 570 (1996);

*Smythe v. Stroman,* 251 S.C. 277, 289, 162 S.E.2d 168, 173 (1968); *Moseley v. Welch,* 209 S.C. 19, 33, 39 S.E.2d 133, 140 (1946); *Walker v. Bennett,* 125 S.C. 389, 118 S.E. 779 (1923), unless the Court finds the special law to be in direct conflict with the general law such that the two cannot operate simultaneously, *Smythe v. Stroman,* 251 S.C. 277, 289, 162 S.E.2d 168, 173 (1968); *Kearse v. Lancaster,* 172 S.C. 59, 61, 172 S.E. 767, 768 (1934), or if the Court finds, through a rational basis analysis, that a general law could be made applicable, *Horry County v. Horry County Higher Educ. Com'n,* 306 S.C. 416, 418, 412 S.E.2d 421, 423 (1991).

Based on the allegations contained in the School District's complaint, I see no legal theory under which the School District could prevail. In my opinion, rather than conflicting with the Charter Schools Act, Act 189 merely operates within its framework. In its complaint, the School District alleges that Section 5(A) of Act 189 conflicts with section 59–40–140(D) [6] of the South Carolina Code. Section 5(A) of Act 189 reads:

> The Charleston County School District may not deny a charter school, charter school teacher, or charter school student anything that is otherwise available to a public school, public school teacher, or public school student including, but not limited to, the provisions in subsection (B).

Section 59–40–140(E) states that services provided by the local school district, "including, but not limited to, food services, custodial services, maintenance, curriculum, media services, libraries, and warehousing are subject to negotiation between a charter school and the sponsor or local school district." S.C.Code Ann. § 59–40–140(E) (Supp.2010). On its face, I do not believe that subsection 5(A) of Act 189 conflicts with section 59–40–140(E). The general law requires that the school district open *all* of its services to negotiation with a charter school, while Act 189 states simply that the School District *may not deny* anything otherwise available to a public school. To me, these provisions work in conjunction.

---

**6.** After a 2006 revision to the Charter Schools Act, this is now section 59–40–140(E) (Supp.2010). For clarity, I refer to the most current rendering of the provision.

The School District additionally alleges that subsection (B)(1) of Act 189 conflicts with sections 59–40–140(J) and 59–40–170 of the South Carolina Code. Subsection (B)(1) of Act 189 reads: "The local school district of a charter school in Charleston County may not charge rent to a charter school that was converted from an existing public school." Section 59–40–140(J) states that "[c]harter schools may acquire by gift, devise, purchase, lease, sublease, installment purchase agreement, land contract, option, or by any other means, and hold and own in its own name buildings or other property for school purposes and interests in it which are necessary or convenient to fulfill its purposes."

I read subsection (B)(1) of Act 189 to mean that the School District may not charge rent to charter schools housed in the School District's facilities by virtue of the fact they were formerly public schools. This provision is unrelated to section 59–40–140(J), which provides a listing of methods by which a charter school may *acquire* property. The two provisions can operate simultaneously, as a Charleston county charter school may remain in their buildings rent-free under the local law, but may also acquire property for use under any of the enumerated means of section 59–40–140(J).

I also disagree with the School District's claim that subsection (B)(1) of Act 189 conflicts with section 59–40–170 of the South Carolina Code. Rather, I believe subsection (B)(1) rests neatly within its prescription. Section 59–40–170 requires the Department of Education to provide charter schools, upon request, a list of vacant and unused portions of buildings owned by school districts, and if a school district decides to sell or lease one of these buildings, a charter school "must be given the first refusal to purchase or lease the building under the same *or better* terms and conditions as it would be offered to the public." S.C.Code Ann. § 59–40–170 (Supp.2010) (emphasis supplied). First, this provision refers to a charter school's acquisition of new property, and I believe subsection 5(A) of Act 189 allows a charter school that was converted to a public school to remain in the facility rent-free. But even if subsection 5(A) is not interpreted as narrowly, and it requires the School District to provide additional facilities to converted charter schools, the general law provides two options to school districts they may either give first right of refusal under (1)

the same terms, or (2) better terms. Subsection 5(A) of Act 189 simply requires the School District supply its facilities to converted charter schools under better terms than the general public. Again, on its face, I do not see that Act 189 conflicts with any provision of the general law. Therefore, I would affirm the circuit court's dismissal of this case because I do not believe the School District's claim can prevail under any legal theory.